**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF GEORGIA
BRUNSWICK DIVISION**

MICHAEL ARTHUR NIXON,

        Movant,

    v.

UNITED STATES OF AMERICA,

        Respondent.

CIVIL ACTION NO.: 2:20-cv-107

(Case No.: 2:18-cr-50)

## ORDER AND REPORT AND RECOMMENDATION

Movant Michael Nixon ("Nixon"), who is currently housed at the Coleman Low Federal Correctional Institution in Coleman, Florida, filed a 28 U.S.C. § 2255 Motion to Vacate, Set Aside, or Correct Sentence.  Doc. 1.  The Government filed a Motion to Dismiss, and Nixon filed a Response.  Docs. 8, 10.  Nixon also filed a Motion to Unseal Document and for Appointment of Counsel.  Doc. 4.  For the reasons which follow, I **RECOMMEND** the Court **GRANT** the Government's Motion to Dismiss, **DENY** Nixon's § 2255 Motion, **DIRECT** the Clerk of Court to **CLOSE** this case and enter the appropriate judgment of dismissal, and **DENY** Nixon *in forma pauperis* status on appeal and a Certificate of Appealability.  I **DENY** Nixon's Motion to Unseal Document and for Appointment of Counsel.  Doc. 4.

## BACKGROUND

Nixon was charged and indicted, along with 17 co-defendants, for conspiracy to possess with intent to distribute and to distribute controlled substances, in violation of 21 U.S.C. §§ 846 and 841(a)(1) and (b)(1)(A) (count 1), and possession with intent to distribute controlled substances, in violation of 21 U.S.C. § 841 (count 10).  United States v. Nixon, 2:18-cr-50 (S.D.

Ga.) ("Crim. Case"), Doc. 154.  Nixon faced a sentence of not less than 10 years' imprisonment nor more than life on count 1 and not more than 20 years' imprisonment on count 10.  Crim. Case, Doc. 155.  Nixon's appointed counsel, Jason Tate, filed several motions on Nixon's behalf. Crim. Case, Docs. 365–72.  The Government filed a notice of its intention to seek enhanced punishment for Nixon based on 21 U.S.C. § 851 due to his previous conviction in Florida for a "serious drug felony."  Crim. Case, Doc. 395 at 2.  Nixon and Mr. Tate were able to negotiate a plea agreement with the Government whereby Nixon agreed to plead guilty to a lesser included offense of the conspiracy charge (count 1).  Crim. Case, Doc. 563.  In exchange, the Government agreed to not object to a recommendation Nixon receive a three-level reduction for acceptance of responsibility and move the Court to dismiss the remaining count against Nixon.  Id. at 3–4.  The Honorable Lisa Godbey Wood held a change of plea, or Rule 11, hearing.

At the outset of this hearing, Judge Wood informed Nixon the purpose of the hearing was to make sure he understood the case pending against him, all the rights he was giving up if Judge Wood accepted his plea, was pleading guilty because that was what he wanted to do after consultation with Mr. Tate, and there was a factual basis for the plea.  Crim. Case, Doc. 955 at 2–3.  During the plea hearing, Task Force Officer ("TFO") Michael Sapp with the Federal Bureau of Investigation Coastal Georgia Violent Task Force provided the factual basis for the plea, Nixon admitted to the truth of Sapp's testimony, Judge Wood accepted Nixon's plea, and Judge Wood directed the United States Probation Office to prepare a pre-sentence investigation report ("PSR").  Id. at 19–21.  Judge Wood later sentenced Nixon to 137 months' imprisonment, to be served concurrently with Nixon's 51-month sentence imposed in revocation proceedings in Case Number 2:04-cr-14.  Crim. Case, Doc. 796.

Nixon has now filed a § 2255 Motion to challenge his sentence. Doc. 1. The Government filed a Motion to Dismiss, and Nixon filed a Response. Docs. 8, 10. This matter is fully briefed and ripe for the Court's review.

## DISCUSSION

**I.      The Waiver Provision in the Plea Agreement Bars Nixon's Prosecutorial Misconduct Claim**

Nixon contends it was obvious the probation officer relied on statements from Robert Johnson in preparing the PSR and the Government did nothing to remove the "perjured testimony" from the PSR. Doc. 1 at 4. According to Nixon, Johnson lied about Nixon's drug activities in an effort to reduce his (Johnson's) 20-year sentence. Id. at 7. Specifically, Nixon states he was released from custody in June 2017 and had an ankle monitor, so his movements were monitored. Nevertheless, Johnson, in his proffer to federal agents, stated Nixon began visiting him on a weekly basis to buy 18 ounces of cocaine hydrochloride. Id. at 8. In addition, Nixon contends Johnson falsely stated he began selling Nixon 10 ounces of cocaine in January 2018 and increased the quantity to 15 ounces between March and June 2018 and eventually increased the quantity to 24 ounces and was buying from Johnson twice a week. Id. Nixon alleges the Government was tracking his movements from March through September 2018, which does not corroborate Johnson's statements. Id. at 8–9. Nixon contends the Government knew Johnson was lying about Nixon having taken 30 trips to Jacksonville to buy cocaine, as the "facts" show he only took 5 trips for any number of reasons. Id. at 9. Nixon claims the Government failed to correct the record at sentencing, which denied the Court the opportunity to address the "perjured testimony" and its effect on sentencing. Id. at 11–12. Nixon contends the

Government's misconduct resulted in a higher sentence than he would have received without this erroneous information.[1] Id. at 14.

The Government asserts the collateral attack waiver in Nixon's plea agreement bars his prosecutorial misconduct claim.  Doc. 8 at 11.  The Government maintains Nixon's guilty plea agreement was knowingly and voluntarily entered and the only exception to the collateral attack waiver is a claim of ineffective assistance of counsel.  Id. at 12.  The Government states Nixon's claim falls within the scope of the waiver.  Id. at 13.  In the alternative, the Government asserts Nixon procedurally defaulted this claim by not raising it on appeal and cannot show cause and prejudice to overcome his default.  Id. at 14–16.

After pleading guilty, a defendant can only attack his resulting conviction in "strictly limited" circumstances.  Bousley v. United States, 523 U.S. 614, 621 (1998).  A § 2255 challenge to a conviction by guilty plea is "ordinarily confined to whether the underlying plea was both counseled and voluntary.  If the answer is in the affirmative, then the conviction and the plea, as a general rule, foreclose the collateral attack."  United States v. Broce, 488 U.S. 563, 569 (1989) (finding constitutional determination defendant could not raise double jeopardy claim on collateral attack following guilty plea); see also Jordan v. United States, CV118-142, 2019

---

[1]     Nixon asks for the grand jury proceeding transcript of Johnson's testimony under the Jencks Act. Doc. 1 at 10.  Jencks Act materials, generally, are statements and reports of governmental witnesses in a criminal prosecution brought by the United States.  18 U.S.C. § 3500.  Mr. Tate moved for disclosure of any Jencks Act material.  Crim. Case, Doc. 370.  There is no evidence Johnson testified before the grand jury.  Instead, Johnson gave a proffer to law enforcement officials, PSR, ¶ 21, which was not given under oath but could have been used as impeachment evidence in later proceedings, to the extent there were any material inconsistencies between his proffer statements and any testimony given under oath.  See United States v. Moralez, 808 F.3d 362, 368 (8th Cir. 2015) (noting inconsistencies between proffer interviews and trial testimony, but the inconsistencies were not enough to render agent's testimony unreliable).  The Court need not address Nixon's claims of "perjured testimony," as the proffer does not fit within that definition.  What is more, as noted elsewhere in this Report, the probation officer did not attribute quantities to Nixon which were based on any alleged 2017 transactions and solely on Johnson's statements.  PSR, ¶¶ 21–24.  In any event, the Court addresses Nixon's request for completeness purposes only, even though the waiver provisions of his plea agreement plainly bar any such request.

WL 4879136, at *8 (S.D. Ga. Aug. 5, 2019) (noting record verified movant's agreement to collateral attack waiver of all claims other than ineffective assistance of counsel was knowing and voluntary and barred claims covered by that waiver); in turn citing <u>Carstarphen v. United States</u>, Civ. Action No. 07-0417, 2008 WL 4369010, at *2–3 (S.D. Ala. Sept. 25, 2008) (barring review of claims of prosecutorial misconduct based on valid collateral attack waiver)).

When a defendant enters a guilty plea pursuant to Rule 11 proceedings, "there is a strong presumption that the statements made during the colloquy are true" and his plea is knowing and voluntary. <u>United States v. Gonzalez-Mercado</u>, 808 F.2d 796, 800 n.8 (11th Cir. 1987). To determine whether a guilty plea was made knowingly and voluntarily, a court must specifically "address . . . three 'core principles,' ensuring that a defendant (1) enters his guilty plea free from coercion, (2) understands the nature of the charges, and (3) understands the consequences of his plea." <u>United States v. Lambert</u>, 777 F. App'x 336, 339 (11th Cir. 2019) (quoting <u>United States v. Moriarty</u>, 429 F.3d 1012, 1019 (11th Cir. 2005)).

In addition, a defendant must live with what he has told a court under oath. A defendant's sworn testimony to the trial judge in open court is presumed to be truthful. In the context of a plea hearing, the United States Supreme Court has stated, "[T]he representations of the defendant . . . at such a hearing, as well as any findings made by the judge accepting the plea, constitute a formidable barrier in any subsequent collateral proceedings. Solemn declarations in open court carry a strong presumption of verity." <u>Blackledge v. Allison</u>, 431 U.S. 63, 73–74 (1977). The defendant's representations are presumptively trustworthy and are considered conclusive absent compelling evidence showing otherwise. <u>Id.</u>

Nixon and Mr. Tate were able to negotiate a plea agreement with the Government whereby Nixon agreed to plead guilty to a lesser included offense of the conspiracy charge

(count 1).  Crim. Case, Doc. 563 at 1.  In exchange, the Government agreed to not object to a recommendation Nixon receive a three-level reduction for acceptance of responsibility and move the Court to dismiss the remaining count against Nixon.  Id. at 4.  The plea agreement set forth the statutory elements and factual basis of the offense to which Nixon was pleading guilty.  Id. at 1–2.  Nixon agreed he was guilty of the offense.  Id. at 11.  Additionally, Nixon agreed no one had promised him a particular sentence or range and the Court could impose a sentence up to the statutory maximum sentence but would look to the Sentencing Guidelines and sentencing factors of 18 U.S.C. § 3553(a).  Id. at 3–4.  Further, Nixon affirmed he had read and reviewed the agreement with Mr. Tate, understood the provisions of the agreement, voluntarily agreed to it, and stipulated to the factual basis as being true and accurate.  Id. at 11.

Nixon appeared before Judge Wood for his Rule 11 proceeding.  Judge Wood addressed Nixon and informed him the purpose of the hearing was to ensure he understood the case pending against him, he understood all of the rights he was waiving or giving up by pleading guilty, there was a factual basis for the guilty plea, and, after consultation with Mr. Tate, pleading guilty was what Nixon wanted to do.  Crim. Case, Doc. 955 at 2–3.  Judge Wood inquired whether anyone had made, pushed, or leaned on Nixon to offer to plead guilty, and he said no one had done so and pleading guilty was what he wanted to do.  Id. at 3.

After Nixon was sworn in, Judge Wood told Nixon he did not have to plead guilty.  Id. at 6.  Judge Wood also told Nixon, if he chose to persist in his not guilty plea, he would have the right to: a public and speedy trial by jury; a presumption of innocence that would follow throughout the trial; the assistance of trial counsel; see, hear, confront, and cross-examine the Government's witnesses and evidence; call witnesses on his behalf; and testify himself or remain silent.  Id. at 6–7.  However, Judge Wood cautioned Nixon he would be waiving these rights if

he pleaded guilty and Judge Wood accepted that guilty plea.  Id. at 7.  Nixon stated he understood and had no questions about the waiver of his rights.  Id.  When Judge Wood asked Nixon how far he had gone in school, Nixon informed her he completed one year of college and stopped going to college once he obtained his welding certificate.  Id. at 4–5.  Judge Wood inquired whether Mr. Tate and Nixon went through the documents involved in the case, including the superseding indictment and plea agreement, and Nixon said he and Mr. Tate had gone over the facts and law of his case, the superseding indictment, and the plea agreement together.  Id. at 7–8.  Nixon stated Mr. Tate had spoken with him in general terms about the advisory Sentencing Guidelines and affirmed he was satisfied with Mr. Tate's representation.  Id. at 8.

Judge Wood reviewed the superseding indictment with Nixon, the essential elements of the crime to which he was pleading guilty and the other count of the indictment naming him, and what the Government would have to prove on the essential elements.  Id. at 8–10.  Judge Wood advised Nixon to convict him of the lesser included offense of count 1 of the superseding indictment, the Government would have to prove beyond a reasonable doubt three essential elements: (1) two or more people in some way agreed to try to accomplish a shared and unlawful plan to possess quantities of cocaine, a Schedule II controlled substance; (2) Nixon knew of the unlawful purpose of this plan and willfully joined it; and (3) the object of the unlawful plan was to possess with the intent to distribute cocaine.  Id. at 10.  By pleading guilty, Judge Wood noted Nixon was admitting the essential elements of the crimes to which he intended to plead guilty were satisfied without further proof from the Government.  Id.

Judge Wood advised Nixon of the maximum sentence she could ordinarily impose for the lesser included count, which was not more than 20 years in prison on count 1, but the

Government had filed a § 851 notice to apply an enhancement based on Nixon's 1998 Florida cocaine trafficking conviction.  Id. at 11.  Judge Wood told Nixon he would have until sentencing to contest his prior conviction, but, if he did not, he would be subject to increased penalties, which would be not more than 30 years' imprisonment.  Id.  Judge Wood explained to Nixon, in imposing a sentence upon him, she would have to take into consideration the advisory Sentencing Guidelines and the factors set forth in 18 U.S.C. § 3553.  Id. at 12–13.  Judge Wood also stated she would consider some "major factors," including Nixon's criminal history, his role in the offense, and whether he told the truth and accepted responsibility.  Id. at 13.  Nixon stated he understood and had no questions.  Id.  Judge Wood inquired whether anyone had promised Nixon an exact sentence, and Nixon stated no one had, to which Judge Wood responded that was good because all anyone could provide Nixon was his "best guess," which was not binding upon her.  Id.  Nixon verified Mr. Tate had his permission to negotiate with the United States to reach a plea agreement.  Id.

Judge Wood asked the Assistant United States Attorney ("AUSA") to summarize the provisions of the plea agreement.  AUSA Matt Josephson stated the material provisions were:

> Defendant will plead guilty to the lesser included offense of Count 1 of the superseding indictment.  The Government will not object to a recommendation by the United States Probation Office that the defendant receive an appropriate reduction in offense level for acceptance of responsibility . . . .

> The plea agreement has an appeal waiver.  The agreement also has a collateral attack waiver.  The defendant also waives all rights to request information about the investigation and prosecution of his case under the Freedom of Information Act or the Privacy Act.  The defendant waives the protections of Rule 11(f) of the Federal Rules of Criminal Procedure and Rule 410 of the Federal Rules of Evidence.

> If he fails to plead guilty or later withdraws that guilty plea[,] all statements made by him in connection with that plea and any leads derived therefrom shall be admissible for any and all purposes.

> The defendant also will affirm that he was previously convicted of a serious drug felony offense[,] as alleged in the 851 information filed by the Government in Docket 395.
>
> The defendant agrees that he served a term of imprisonment of more than 12 months for that serious drug felony offense and that he was released from imprisonment within 15 years of October 2017.

Id. at 13–15.  Judge Wood asked Nixon if AUSA Josephson's summarization of the plea agreement was consistent with the plea agreement he signed, and he stated it was.  Id. at 15. Nixon also stated he read the plea agreement before he signed it, and Nixon affirmed no one had made him any promises regarding the outcome of his case, other than the provisions contained in the plea agreement.  Id. at 16.  Judge Wood also discussed the appeal waiver contained in the plea agreement, including the limited exceptions if: she were to sentence Nixon above the statutory maximum; she were to sentence Nixon above the advisory Guidelines range, as found by her; and the Government were to file a direct appeal.  Id.  Judge Wood also noted Nixon's plea agreement contained a collateral waiver, which was: "Defendant entirely waives his right to collaterally attack his conviction and sentence on any ground and by any method[,] including but not limited to a 28 U.S.C. Section 2255 motion."  Id. at 16–17.  The only exception to that waiver of collateral attack, Judge Wood noted, is the right to collaterally attack based on a claim of ineffective assistance of counsel.  Id. at 17.

Judge Wood then asked Nixon whether he wished to still plead guilty to the lesser included offense of count 1of the superseding indictment because he was in fact guilty of that count, and he answered in the affirmative.  Id.  Judge Wood also asked Nixon whether he understood the rights and privileges he was waiving if she accepted his plea, and Nixon said he did.  Id. at 17–18.  Judge Wood determined Nixon's offer to plead guilty was made "knowing[ly]" and "voluntar[ily]."  Id. at 18.  Nixon agreed.  Id.

The Government provided a factual basis for Nixon's plea of guilty by calling TFO Sapp to testify.  Id.  TFO Sapp testified he was involved in an investigation into drug trafficking in the Brunswick, Georgia area from October 2017 through October 2018.  Id. at 19.  TFO Sapp stated law enforcement officials used surveillance, multiple confidential informants, controlled buys, pole cameras, GPS tracking devices, search warrants, and several Title III wiretaps during the course of this investigation.  Id. at 19–20.  Nixon, whose telephone was a target telephone for at least one wiretap, was involved in the purchase and distribution of large quantities of cocaine. Id. at 20.  TFO Sapp stated law enforcement officers surveilled Nixon meeting his supplier and then meeting other people to whom he distribute cocaine.  Id.  TFO Sapp also noted law enforcement officials conducted a search of Nixon's home on June 14, 2018, "which yielded 369 grams of powder cocaine, a quantity of marijuana, a large amount of currency, scales, baggies, [and] beakers that could be used [for] cooking the cocaine."  Id.  Nixon did not dispute any of TFO Sapp's testimony.  Id. at 21.  Judge Wood was "satisfied" there was a factual basis for a plea, accepted Nixon's plea, and adjudged him guilty of the lesser included offense of count 1 of the superseding indictment.  Id.  Judge Wood advised Nixon a probation officer would prepare a PSR, and the Court would schedule a sentencing hearing after the PSR was disclosed to the Government and to Mr. Tate.  Id.

To be clear, Judge Wood informed Nixon at the outset of the initial Rule 11 hearing the purpose of the hearing was for him to understand the case pending against him, the rights he was waiving by pleading guilty, the factual basis for his plea, and whether pleading guilty was what Nixon wanted to do after consultation with his attorney.  Id. at 2–3.  After telling Nixon he would be asked to swear under penalty of perjury to tell the truth at his Rule 11 hearing or the Government could prosecute him for perjury, Nixon averred no one was forcing him to plead

guilty and pleading guilty was what he wanted to do.  Id. at 3.  Judge Wood discussed the specific rights Nixon was afforded if he chose to persist with a not guilty plea, and Judge Wood advised Nixon he would waive those rights if he pleaded guilty and Judge Wood accepted his plea.  Id. at 6–7.  Nixon stated he had spoken with Mr. Tate about the facts and law of his case, including the plea agreement, superseding indictment, and the sentencing Guidelines in general terms.  Id. at 7–8.  Nixon verified AUSA Josephson's summary of the plea agreement was consistent with the plea he had signed.  Id. at 15.  Judge Wood asked Nixon whether he wanted to plead guilty because he was, in fact, guilty of a lesser included offense of count 1 of the superseding indictment, and he answered in the affirmative.  Nixon declared he understood the rights and privileges he was waiving by pleading guilty, including appeal and collateral attack waivers, and proceeded to do so.  Judge Wood determined Nixon's guilty plea was knowing and voluntary.  Id. at 18.  TFO Sapp then provided a factual basis for Nixon's plea, and Nixon did not dispute the Government's factual basis.  Id. at 20.  Judge Wood accepted Nixon's plea and adjudged him guilty of the lesser included offense of count 1 of the superseding indictment.  Id. at 21.  In so doing, Judge Wood addressed the "three core principles" required during a Rule 11 hearing.  Lambert, 777 F. App'x at 339.

Because Nixon's guilty plea was knowing and voluntary and Judge Wood ensured Nixon understood he was waiving his right to collaterally attack his conviction or sentence in any manner, other than on a claim of ineffective assistance of counsel, the waiver provisions of Nixon's plea agreement precludes review of this claim.  Thus, the Court should **DENY** this claim.  I decline to address whether Nixon procedurally defaulted this claim by not raising it on appeal.

## II.     Counsel Did Not Render Ineffective Assistance During Sentencing

Nixon contends Mr. Tate rendered ineffective assistance during the sentencing proceedings in this case because he failed to have Johnson's statements removed.  Doc. 1 at 4. In addition, Nixon states Mr. Tate was ineffective for not challenging the indictment or evidence. Id.  Nixon asserts the only proven weight of cocaine was the 376 grams of cocaine found in his house during the search.  Id. at 16.  Nixon maintains the United States Supreme Court's decision in United States v. Alleyne, 570 U.S. 99 (2013),[2] requires drug type and quantity be charged in the indictment, submitted to a jury, and proven beyond a reasonable doubt.  Id. at 15–16.  Nixon alleges Mr. Tate knew the weight alleged in the PSR was based on Johnson's statements, yet Mr. Tate did not move to have all of Johnson's statements removed from the PSR.  Id. at 16. According to Nixon, if the correct weight had been attributed to him, his Guidelines' range would have been 37 to 46 months' imprisonment.  Id. at 17–18.

In response, the Government asserts Mr. Tate objected to the weight calculation from Johnson's proffer statement in objections to the PSR and in his sentencing memorandum.  Doc. 8 at 20.  The Government asserts Mr. Tate made "substantially the same arguments" in both of these documents as Nixon does in his § 2255 Motion.  Id.  Additionally, the Government contends the Court did not rule on these objections because Nixon withdrew them at sentencing, in exchange for the Government recommending Nixon receive a 121-month sentence, which it did.  Id.

---

[2]      In Alleyne, the Supreme Court held mandatory minimum sentences increase the penalty for a crime and any fact which increases the mandatory minimum is an "element" which must be submitted to a jury and found by a reasonable doubt.  570 U.S. at 103.  Pretermitting whether this holding would otherwise be applicable to Nixon, he waived any such argument by pleading guilty and foregoing his right to a jury trial.

What is more, the Government states the probation officer noted she did not use Johnson's proffer statement regarding the time Nixon was being monitored while at the halfway house. Id. at 21. The Government also states Nixon offers no evidence to support a claim the Government was monitoring him via GPS trackers for the entire period of 2018, and Mr. Tate was under no obligation to advance an unsupported argument. Further, the Government notes, even if Nixon had not withdrawn his objections to the PSR and the Court sustained those objections, Judge Wood explained she would have imposed the same 137-month sentence she did impose based on the § 3553 factors. Id.

Criminal defendants have a right to effective assistance of counsel at all critical stages of the proceedings. Strickland v. Washington, 466 U.S. 668 (1984). This right extends to the right to proceed to trial, see Carver v. United States, 722 F. App'x 906 (11th Cir. 2018), and also extends to sentencing proceedings, Glover v. United States, 531 U.S. 198, 202 (2001). To prevail on a claim of ineffective assistance of counsel, the defendant must demonstrate (1) his counsel's performance was deficient, i.e., the performance fell below an objective standard of reasonableness, and (2) he suffered prejudice as a result of that deficient performance. Strickland, 466 U.S. at 685–86. The deficient performance requirement concerns "whether counsel's advice was within the range of competence demanded of attorneys in criminal cases." Hill v. Lockhart, 474 U.S. 52, 56 (1985). There is a strong presumption counsel's conduct fell within the range of reasonable professional assistance. Davis v. United States, 404 F. App'x 336, 337 (11th Cir. 2010) (citing Strickland, 466 U.S. at 686).

"It is petitioner's burden to 'establish that counsel preformed outside the wide range of reasonable professional assistance' by making 'errors so serious that [counsel] failed to function as the kind of counsel guaranteed by the Sixth Amendment.'" LeCroy v. United States, 739 F.3d

13

1297, 1312 (11th Cir. 2014) (quoting Butcher v. United States, 368 F.3d 1290, 1293 (11th Cir. 2004) (alteration in original)).  "Showing prejudice requires petitioner to establish a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  Id. (internal citation omitted).  "The prejudice prong requires a petitioner to demonstrate that seriously deficient performance of his attorney prejudiced the defense."  Id. at 1312–13.  "The likelihood of a different result must be substantial, not just conceivable." Harrington v. Richter, 562 U.S. 86, 112 (2011).  "In evaluating performance, 'counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment.'"  LeCroy, 739 F.3d at 1312 (quoting Strickland, 466 U.S. at 690).  "If a petitioner cannot satisfy one prong, [a court] need not review the other prong." Duhart v. United States, 556 F. App'x 897, 898 (11th Cir. 2014).  "The burden of persuasion is on a section 2255 petitioner to prove, by a preponderance of the competent evidence, both that counsel's performance was unreasonable, and that []he was prejudiced by that performance." Demar v. United States, 228 F. App'x 940, 950 (11th Cir. 2007).

"[A] court deciding an actual ineffectiveness claim must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct."  Strickland, 466 U.S. at 690.  "The cases in which habeas petitioners can properly prevail on the ground of ineffective assistance of counsel are few and far between." James v. Sec'y, Dep't of Corr., No. 8:12-CV-1363, 2013 WL 5596800, at *3 (M.D. Fla. Oct. 11, 2013) (citing Waters v. Thomas, 46 F.3d 1506, 1511 (11th Cir. 1995)); Body v. United States, Crim. Action No. 10-0232, 2013 WL 2470660, at *20 (S.D. Ala. June 6, 2013) (citing Johnson v. Alabama, 256 F.3d 1156, 1176 (11th Cir. 2001)).

Even if counsel made an error so egregious as to be outside the broad scope of competence expected of attorneys, a movant can obtain relief only if the error caused actual prejudice. Strickland, 466 U.S. at 691–92. In order to establish actual prejudice, a petitioner must show "there is a reasonable probability that but for the attorney's unprofessional errors, the result of the proceeding would have been different." Armstead v. Scott, 37 F.3d 202, 207 (5th Cir. 1994). A reasonable probability is a probability sufficient to undermine confidence in the outcome of the proceedings. Strickland, 466 U .S. at 694. "The likelihood of a different result must be substantial, not just conceivable." Harrington v. Richter, 562 U.S. 86, 112 (2011).

The probation officer recounted events Johnson relayed in his April 2019 proffer interview with law enforcement officials concerning Nixon and an individual named "Prime" having partnered together, and the two visiting Johnson in June 2017 for the purpose of buying cocaine. PSR, ¶ 21. At this time, Johnson stated Prime and Nixon bought 18 ounces, or 510.3 grams, of cocaine hydrochloride on a weekly basis. However, the probation officer stated Nixon was a resident at Dismas Charities, a halfway house in Savannah, Georgia, from April 11 through October 4, 2017, and was on GPS monitoring the entire time; as a result, the probation officer did not attribute any weight based on Johnson's statements for this period. Id. Johnson also offered he sold cocaine to Nixon separately from Prime and began in January 2018 by selling Nixon 10 ounces, or 283.5 grams, of cocaine. Id. at ¶ 22. Johnson stated, between March and June 2018, Nixon bought 15 ounces (425.25 grams), then 18 ounces (510.3 grams), and eventually 24 ounces (680.4 grams) of cocaine per buy, twice a week, until a search warrant was executed at Nixon's residence in June 2018. Nixon bought a total of 6 ounces (170 grams) of cocaine over the course of three buys after the execution of the search warrant. The probation officer attributed 300 ounces (8,505 grams, or 8.5 kilograms) of cocaine hydrochloride to Nixon

based on his buys from Johnson.  Id.  In addition, the probation officer conservatively attributed to Nixon 129 ounces (3,656.9 grams, or 3.6 kilograms) based on Title III wiretaps on his and Jermaine Fuller's telephones.  Id. at ¶ 23.  The probation officer summarized by attributing 300 ounces (8,505 grams) of cocaine hydrochloride to Nixon based on the seizures in the case, wire intercept information, and interviews with Johnson but wished to remain conservative and to avoid double counting and did not attribute "any additional corroborative quantities identified through the wiretap, the search warrant, or" another interview.  Id. at ¶ 24.  Nixon's base offense level under the Guidelines was 30, as his offense involved at least 5 but less than 15 kilograms of cocaine hydrochloride, and was increased by 2 levels for maintaining his residence for drug distribution.  Id. at ¶¶ 30, 31.  After Nixon's acceptance for responsibility three-level decrease was considered, his total offense level was 29.  Id. at ¶¶ 37–39.  This level, coupled with a criminal history category of IV, resulted in an advisory Guidelines' range of 121 to 151 months' imprisonment.  Id. at ¶¶ 50–52, 93.

Mr. Tate lodged objections to the PSR on Nixon's behalf.  Specifically, Mr. Tate objected to the determination to attribute 300 ounces, or 8.5 kilograms, to Nixon, arguing there was no adequate factual basis to support this attribution.  PSR Add. at 1.  Mr. Tate also objected to the attributed weight in his sentencing memorandum and stated the weight of cocaine hydrochloride should have been 2.0 kilograms (and the two-point enhancement for using a residence primarily for drug distribution should be removed), resulting in an offense level of no more than 23 and an advisory Guidelines' range of 70 to 87 months' imprisonment.  Crim. Case, Doc. 776 at 2. However, at the sentencing hearing, Mr. Tate advised the Court he and the Government were able to resolve these objections and withdrew them, agreed the evidence set forth in the PSR supported an advisory Guidelines' range of 121 to 151 months in prison, and the Government

asked the Court to impose a 121-month sentence.  Crim. Case, Doc. 954 at 4–5.  Nixon stated he wished to proceed in this posture after Judge Wood asked him directly about Mr. Tate's and the AUSA's representations.  Id. at 6–7.  Judge Wood then adopted the probation officer's factual statements and application of the advisory Guidelines and determined Nixon had a total offense level of 29 and criminal history category of IV, which called for an advisory Guidelines' range of 121 to 151 months' imprisonment.  Id. at 7.  Mr. Tate argued extensively about the § 3553 factors and their interplay with the advisory Guidelines, as well as the fact Chief Judge J. Randal Hall had imposed a 51-month sentence in a revocation proceeding, sought to have the sentence in this case be ordered to be served concurrently with that revocation sentence, and discussed sentences imposed on Nixon's co-defendants.  Id. at 8–13.  After hearing from the Government and Nixon, who did not dispute Johnson's information, and in consideration of all the filings in the case and arguments and statements made at the sentencing hearing, Judge Wood sentenced Nixon to 137 months' imprisonment, to be served concurrently with the revocation sentence Chief Judge Hall imposed.  Id. at 17–18.  Judge Wood specifically noted she considered Nixon's criminal history, which she described as "not good at all," and Nixon having resumed committing federal offenses not long after he finished a "very long sentence."  Id. at 18.  Judge Wood also found no reason to vary or depart from the application of the advisory Guidelines and observed, "[R]egardless of how those [G]uidelines would have worked out, I would have, just based on the [§] 3553 factors, imposed a sentence of 137 months."  Id. at 19.

Nixon fails to establish Mr. Tate rendered deficient performance, as he objected to the weight attribution, even though he later withdrew the objections.  In addition, the probation officer noted she was not considering any amounts set forth in Paragraph 21 because Nixon was in a halfway house at that time.  PSR, ¶ 21; Exh. B to PSR.  Further, even if Mr. Tate had

performed deficiently, Nixon cannot show he was prejudiced by any alleged deficient performance.  Judge Wood stated she would have imposed the 137-month sentence she did based on the § 3553 factors alone.  Because Nixon fails to show deficient performance and prejudice, the Court should **DENY** this portion of his § 2255 Motion.  <u>Demar</u>, 228 F. App'x at 950.

III.    **Nixon's Motion to Unseal and for Appointment of Counsel**

Nixon asserts he does not understand and was not informed this Court sealed his § 2255 Motion.  Doc. 4.  He asks that his § 2255 Motion and all other filings be unsealed and "all expungements be removed" so counsel and a paralegal research firm can access these documents on the Court's electronic case filing system (CM/ECF).  <u>Id.</u>  Nixon also asks the Court to appoint him counsel.

The Court is unaware of any pleadings in Nixon's § 2255 proceedings being sealed and **DENIES** this portion of his Motion.  In his criminal proceedings, the transcripts have been filed and may be accessed through Public Access to Court Electronic Records ("PACER").  Crim. Case, Docs. 954, 955.  The Court is unaware of any other documents relevant to Nixon's § 2255 Motion being sealed.

In addition, the Court **DENIES** Nixon's request for appointment of counsel.  There is no automatic constitutional right to counsel in post-conviction proceedings in a criminal case.  <u>See</u> <u>Pennsylvania v. Finley</u>, 481 U.S. 551, 555 (1987); <u>United States v. Webb</u>, 565 F.3d 789, 794 (11th Cir. 2009) (citing <u>Barbour v. Haley</u>, 471 F. 3d 1222, 1227 (11th Cir. 2006)); <u>Hooks v. Wainwright</u>, 775 F.2d 1433, 1438 (11th Cir. 1985); <u>see also</u> <u>Barbour v. Haley</u>, 471 F.3d 1222, 1227–32 (11th Cir. 2006) (Even defendants sentenced to death do not enjoy a constitutional right to post-conviction counsel.).

Under 18 U.S.C. § 3006A(a)(2)(B), the Court may appoint counsel for an indigent litigant seeking relief under §2255, but such requests are discretionary when "due process or the 'interests of justice'" so require.  Hooks, 775 F.2d at 1438; Norris v. Wainwright, 588 F.2d 130, 133 (5th Cir. 1979); see also 28 U.S.C. § 2255(g) & Rule 8 (c) of the Rules of Governing Section 2255 Cases in the United States District Courts (authorizing appointment of counsel under § 3006A).  Moreover, appointment of counsel is "a privilege that is justified only by exceptional circumstances[.]"  McCall v. Cook, 495 F. App'x 29, 31 (11th Cir. 2012).

It does not appear the interests of justice or due process require Nixon be afforded counsel, and it does not appear an evidentiary hearing will be required at this time.  Nixon does not lay out any such circumstances in either his § 2255 motion or this Motion.  Should it later become apparent in these proceedings an evidentiary hearing is required or the interests of justice or due process so require, then counsel shall be appointed for Nixon.

## IV.   Leave to Appeal *in Forma Pauperis* and Certificate of Appealability

The Court should also deny Nixon leave to appeal *in forma pauperis*.  Though Nixon has not yet filed a notice of appeal, it would be appropriate to address these issues in the Court's order of dismissal.  Fed. R. App. P. 24(a)(3) (trial court may certify appeal of party proceeding *in forma pauperis* is not taken in good faith "before or after the notice of appeal is filed").  An appeal cannot be taken *in forma pauperis* if the trial court certifies the appeal is not taken in good faith.  28 U.S.C. § 1915(a)(3); Fed. R. App. P. 24(a)(3).  Good faith in this context must be judged by an objective standard.  Busch v. County of Volusia, 189 F.R.D. 687, 691 (M.D. Fla. 1999).  A party does not proceed in good faith when he seeks to advance a frivolous claim or argument.  See Coppedge v. United States, 369 U.S. 438, 445 (1962).  A claim or argument is frivolous when it appears the factual allegations are clearly baseless or the legal theories are

indisputably meritless.  Neitzke v. Williams, 490 U.S. 319, 327 (1989); Carroll v. Gross, 984 F.2d 392, 393 (11th Cir. 1993).  Thus, a claim is frivolous and not brought in good faith if it is "'without arguable merit either in law or fact.'"  Moore v. Bargstedt, 203 F. App'x 321, 323 (11th Cir. 2006) (quoting Bilal v. Driver, 251 F.3d 1346, 1349 (11th Cir. 2001)); see also Brown v. United States, Nos. 407CV085, 403CR001, 2009 WL 307872, at *1–2 (S.D. Ga. Feb. 9, 2009).

Additionally, under 28 U.S.C. § 2253(c)(1), an appeal cannot be taken from a final order in a habeas proceeding unless a certificate of appealability is issued.  Pursuant to Rule 11 of the Rules Governing Section 2255 cases, the Court "must issue or deny a certificate of appealability when it enters a final order adverse to the applicant."  A certificate of appealability may issue only if the applicant makes a substantial showing of a denial of a constitutional right.  The decision to issue a certificate of appealability requires "an overview of the claims in the habeas petition and a general assessment of their merits."  Miller-El v. Cockrell, 537 U.S. 322, 336 (2003).  In order to obtain a certificate of appealability, a petitioner must show "that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further."  Id.  "Where a plain procedural bar is present and the district court is correct to invoke it to dispose of the case, a reasonable jurist could not conclude either that the district court erred in dismissing the petition or that the petitioner should be allowed to proceed further."  Slack v. McDaniel, 529 U.S. 473, 484 (2000); see also Franklin v. Hightower, 215 F.3d 1196, 1199 (11th Cir. 2000).  "This threshold inquiry does not require full consideration of the factual or legal bases adduced in support of the claims."  Miller-El, 537 U.S. at 336.

Based on the above analysis of Nixon's Motion and the Government's Motion to Dismiss and the Response thereto and applying the Certificate of Appealability standards set forth above, there are no discernable issues worthy of a certificate of appealability; therefore, the Court should **DENY** the issuance of a Certificate of Appealability.  If the Court adopts this recommendation and denies Nixon a Certificate of Appealability, Nixon is advised she "may not appeal the denial but may seek a certificate from the court of appeals under Federal Rule of Appellate Procedure 22."  Rule 11(a), Rules Governing Section 2255 Cases in the United States District Courts.  Furthermore, as there are no non-frivolous issues to raise on appeal, an appeal would not be taken in good faith.  Thus, the Court should likewise **DENY** *in forma pauperis* status on appeal.

## CONCLUSION

For the above-stated reasons, I **RECOMMEND** the Court **GRANT** the Government's Motion to Dismiss, **DENY** Nixon's § 2255 Motion, **DIRECT** the Clerk of Court to **CLOSE** this case and enter the appropriate judgment of dismissal, and **DENY** Nixon *in forma pauperis* status on appeal and a Certificate of Appealability.  I **DENY** Nixon's Motion to Unseal and for Appointment of Counsel.  Doc. 4.

Any objections to this Report and Recommendation shall be filed within 14 days of today's date.  Objections shall be specific and in writing.  Any objection that the Magistrate Judge failed to address a contention raised in the Complaint must be included.  Failure to file timely, written objections will bar any later challenge or review of the Magistrate Judge's factual findings and legal conclusions.  28 U.S.C. § 636(b)(1)(C); Harrigan v. Metro Dade Police Dep't Station #4, 977 F.3d 1185, 1192–93 (11th Cir. 2020).  To be clear, a party waives all rights to challenge the Magistrate Judge's factual findings and legal conclusions on appeal by failing to

file timely, written objections.  Harrigan, 977 F.3d at 1192–93; 11th Cir. R. 3-1.  A copy of the objections must be served upon all other parties to the action.

Upon receipt of Objections meeting the specificity requirement set out above, a United States District Judge will make a de novo determination of those portions of the report, proposed findings, or recommendation to which objection is made and may accept, reject, or modify in whole or in part, the findings or recommendations made by the Magistrate Judge.  Objections not meeting the specificity requirement set out above will not be considered by a District Judge.  A party may not appeal a Magistrate Judge's report and recommendation directly to the United States Court of Appeals for the Eleventh Circuit.  Appeals may be made only from a final judgment entered by or at the direction of a District Judge.

**SO ORDERED** and **REPORTED and RECOMMENDED**, this 22nd day of June, 2022.

BENJAMIN W. CHEESBRO
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA